The first case today is number 22-1189 United States v. James De La Cruz. At this time would counsel for the appellant please come to the podium and introduce himself on the record. Good morning your honors. Benjamin Brooks on behalf of James De La Cruz. So as you know this is a sentence appeal. As you know this is a sentence appeal and the issue before the court is whether the trial judge abused his discretion by imposing a 108 month sentence or a nine year sentence upon Mr. De La Cruz for his role as a middleman in a transaction that involved 10 kilograms of fentanyl and 6 kilograms of heroin. Let me ask you, the 108 months, that's the lower end of the guidelines. Correct. And then that's under RETA, that's presumed reasonable. Are you suggesting that the judge should have varied in some use of discretion, he didn't vary downwards? I am suggesting that he should have varied downwards and the case that I'm looking at, which is cited in my brief, is Cirillo Munoz, which says that guideline sentences are never automatically reasonable and in this district not even presumptively reasonable. So you always have to look at all of the factors and reasonableness is a function of essentially being, well the standard is... They're not presumptively reasonable in our circuit, but they are a good starting point. And so the question is when the judge selects something at the lower end of the guideline range, why wouldn't that be considered reasonable? Well, on the particular facts of this case, I would suggest that when the standard is a sentence should be sufficient but not greater than necessary to achieve the basic aims of sentencing, in this situation, the nine years was far more than necessary to achieve those goals. And of course, the guidelines are a good starting point. But in this instance... What specifically about this case makes it unreasonable to go with the lower guidelines range? Well, in this situation, as the trial counsel put forward, Mr. Dela Cruz grew up in relative poverty. He had no significant criminal history. He immediately accepted responsibility for his actions. He expressed genuine remorse for his... But that happens in 90% of the cases. Sure, it does. But he was also plainly amenable to rehabilitation in some much shorter time frame. He also met the criteria for the safety valve exception, which isn't always true. And that includes the provision that he, quote, truthfully provided the government with all cases are always driven by weight, right? And that's how you sort of mark where the sentence is supposed to start. Counsel, I'm not suggesting that you should be any better informed than we are, but in terms of helping us out, what would you describe the test as being for us to consider when something is not reasonable? Well, I mean, I can't give you language that's any better than what this court has already said, but what this court... You're arguing that this language isn't adequate in this case. Well, what I'm saying is that when reasonableness has been defined by this court as something that is just, rational, not excessive, not unjust, moderate, sensible, right? In this situation... So why is this unjust? Because nine-year sentence for a man who has no significant criminal history and played only a middleman role in the situation is inappropriate. The difficulty is the quantity of drugs involved are such that the Sentencing Commission's view is that kind of offense, even with this Yeah, there's no question that the way... So the thing that I think is being asked of you, is there some... You could imagine unusual cases in which the facts of the case might make one think, despite that quantity, there's some reason to think this is an unusual case and it merits a variance and it was not reasonable not to see that. And certainly our case allows that. It doesn't say that you can never say it's unreasonable just because it was within the guidelines. So I take your point on that. But I guess what I'm looking for, at least, is some explanation of is there something about the facts of this case, notwithstanding the quantity involved, that makes it such an unusual case that it would have been unreasonable for the judge to say, yes, I understand you had no I look at the Commission's analysis of all the sentences all across the country. Its conclusion was, at the low end, this is a reasonable sentence. And I don't see a reason to think that's wrong. What's unreasonable about that? Well, I think from my point of view, you start with the fact that this is a nine-year sentence, which is a very substantial amount of time. It's probably 20% of the average adult person's life. See, that sounds almost like you're making a Kimbrough argument, which is that the judge should just have rejected the Commission's assessment of what the starting point for a sentence of this quantity should be. But I don't think you need to be saying that. No, I'm not saying that. Right. So then you're saying something case-specific. Right. And I guess what we're struggling to figure out is what is the case-specific thing here? So I think the point I want to make to you is that when weight is the driver of the sentence, right, in this situation, this particular situation, well, his codependent got a six-year sentence despite being involved in the same amount of weight. And, of course, there was some difference between the relative roles, but not one that would merit a three-year difference. That's one point. The other thing is that the weight here was determined not by Mr. Delacruz, right? The confidential informant in this case called up his contact within this drug organization. Does the evidence show he knew the weight? Yes. So what happened was. So that might be the type of case where one might think there was more to the point if there was some reason to think he didn't understand the weight. But that's not true here. It's not true that he didn't understand the weight. That's not true. But in terms of his sort of discretion, right, and control over the situation, he was just the guy that was sent out to talk to the buyer, right, to make the logistical arrangements. The amount that was being sold was already determined between the buyer and the Mexican national, who was obviously higher up in the organization. And I think under those circumstances, this was just somewhere where Mr. Delacruz's relatively low role didn't merit that massive nine-year sentence for somebody who has no significant criminal history. And somebody who immediately admitted his guilt and was as cooperative as he could be with the government. And I think sometimes. The judge noted his reference to the term, my driver, suggesting that he had greater control over the driver than he was willing to admit, so therefore a greater role in the conspiracy. I mean, I think that could have just been a turn of phrase. Like, I think on the facts that were presented, right, at the plea and in the PSR, there is a quote where he refers to Roque, Santos Roque, as my driver. But it seemed to me that the evidence suggested that they were sort of two ends, or two spokes from the hub, and they both essentially had a similar relationship to the overall drug operation, and that he wasn't really in charge of Roque in any way. And in some ways, you would say, well, Mr. Delacruz wasn't even trusted to be the ultimate delivery guy. It was Roque who was in the car with the CI who counted out the amounts of drugs. He was the one who had the mechanical hide in his car. I understand the argument that it's sort of, you know, the standard is in these drug cases, you get these kind of sentences all the time, and the government argues, you know, you have to compare apples to apples. But if apples are always being sold for $10 a bushel, and you look around and you see oranges are being sold for $3 a bushel, and peaches are being sold for $3 a bushel, and you go to the apple growers and they say, well, the seeds are expensive, and it takes a lot of money to do this, but then it turns out the seeds for the oranges and the peaches are exactly the same, and it takes exactly the same amount of work, then it seems there's some flaw, some irrationality in the apple market, right? And you need to look beyond that to the reason. So just because something is a convention, right, doesn't mean that it's rational and doesn't mean that it's reasonable. Let me ask you one last question. We're dealing here with 30-plus kilos of fentanyl. What if the judge, instead of giving your client a sentence of 108 months, had said, well, you're asking for a variance. He said, I'm going to vary it down, but I'm going to give him 94 months. Not what you're asking, which I think is what your former attorney was asking in the 30s. Would that still be unreasonable, 94 months? I think what would have been reasonable in this situation was something closer to 63 months, five years, five, six years, somewhere in that range, given his conduct and his role in this. Thank you. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Chief Judge Barron. May it please the court. Mark Quinlivan on behalf of the United States. This court has, of course, said that a sentence is substantively reasonable. The district court provides a plausible sentencing rationale and a defensible overall result. That was amply satisfied in this case. In imposing the sentence, the district court began by emphasizing the amount of drugs, and it was, in his view, an astonishing amount. It was almost 10. It was 9,916 grams of fentanyl and 5,833 grams of heroin, a far larger amount, the district court said, than it had seen in prior cases. What's of some concern to me is the disparity between this gentleman and Roque. I mean, other than the turn of phrase, it's hard to understand why they are not similarly situated and thus why they would not have received similar punishment. Well, there are two answers, Judge Thompson. First, district court noted that Mr. Santos Roque basically just served as the driver in the transaction. All the negotiations had gone between the defendant and the undercover person. It was not something that Mr. Santos Roque was involved in up to the point at which he arrived at the transaction with the drugs in his car. And the second point is that they had a different guideline sentencing range. They had the same amount of drugs were calculated with respect to both of them, but because Mr. Santos Roque got a mitigating role adjustment, his guideline for his offense level not only dropped by two points, but because the base offense level was 36, it dropped by an additional three points. So his total offense level of 26 was five points lower than the defendant. But maybe this is where your opposing counsel's point, I guess, has some force, if I'm following. Now you're talking just the guidelines, right, and they have this consequence. But then I guess the argument is, well, if you look at the substance of it, that's all hinging on some substance of assessment that puts one person in one bracket and the other person in the other bracket. So if we look at the substance of the evidence, does it really justify that kind of significant time disparity between the two? If we really look at the conduct, I realize that once you make the finding, you get into that. But I think they're saying the suggestion is here, well, the guidelines have that consequence, but this is an unusual case because if you look at the facts, their conduct isn't so different that it really would justify that big a change. Yeah, and two answers should just bear. First off, the first one this court has said when you do consider a disparity in sentences, you do have to compare apples and apples. But more importantly, let's go to the substance of the differential difference between the two because the defendant was involved in ongoing negotiations with the confidential source in this case. They met at a restaurant, multiple telephone calls, and then it was ultimately where they agreed to make the transaction, and Mr. Santos was involved. So if you look at the substance... When you say negotiations, I guess I'm just, I'm just understanding, opposing counsel's argument, but maybe there's a question whether that word is a fair word. In other words, was there negotiation, or was there just passing on a direction that in substance is no different than... I mean, obviously the driver showed up when he was supposed to show up. Somebody told him to do that. No, there was a difference because so after the... From the confidential source was that there was a Mexican national who they were engaged in drug transactions with, and eventually the Mexican national told the confidential source that he was going to put him in contact with my boy in New York. That turned out to be the defendant in this case. And then from there on, the record shows that all of the discussions were between the defendant and between the confidential source leading up to the transaction. And you draw from that what that would suggest it makes sense to treat this defendant as much more implicated in the conspiracy than Broek. That he was in fact, and they were discussing prices, quantities, that in fact he played a much higher role in the organization in terms of setting out the details of... And just one last question, just so I make sure I understand the record. Is it the case that the record shows he played a role in determining quantities, price, or do the conversations simply show he was informed of what the quantities and price would be? I believe, so because this was a plea, we're going from the PSR and from... Well, just based on what the district court's findings are, what record it had. I believe that there was discussions with the Mexican national about a certain transaction, but that after he told the confidential source to be in touch with my boy in New York, all the specifics about quantities and price were negotiated with the defendant. So the defendant played a role in setting them, not just being informed of what they would be? Yes. Well, was it setting or was it just availability? What was available to sell rather than what was available as well as how much it was going to cost? I don't believe, Judge Thompson, I don't believe there's nothing in the record that I think points in either direction as to that. How do you respond to your brother's argument that even given his, everything you've described as his involvement, he still wasn't trusted enough to be the actual handler of the drugs and therefore some of his involvement should be, or at least shouldn't be enhanced as much as Rokes, who once again was the actual handler of the drugs? Well, I think two responses. First, I think when I think my friend uses the term handler, I think we go back to the fact that what the district court found based on the defendant's own words was that he was referring to Mr. Santos Rokes simply as his driver rather than as the handler of the drugs. But at the end of the day, the district court didn't just look at drug quantity. The district court did take into account the defendant's history and characteristics. The district court did explain why the sentence imposed was not disparate to that imposed on Mr. Santos Rokes. And the district court did consider other arguments raised by the defendant. The court said that a guideline sentence was appropriate in this case, but it's found that the very low end, as recommended by the government, was the appropriate point. That is a plausible sentencing rationale, and that's a defensible result. And I just point briefly, in this court's decision, Concepcion Gulliam, also a drug case involving fentanyl, this court found the identical sentence imposed in that case, 108 months, to be substantively reasonable. Now, each sentence is individual, and that doesn't compel the conclusion that the sentence is substantively reasonable in this case. But when you are talking about a within-guideline sentence, I think that it strongly supports the conclusion that the standards this court looks to were easily met in this case. I just want to go back to an exchange we had just a moment ago and make sure I understand what the government's understanding of our case law is. One way to read our case law is with respect to a true disparity challenge. It's got to be apples to apples, so if there's a difference, and if the guideline ranges are different, then the guideline ranges are different, so the disparity argument just can't get off the ground. As I understand it, opposing counsel's argument is not just a pure disparity contention. There also is this claim that it was not a reasonable sentence. And in making that argument, they're trying to suggest that the treatment of the other defendant is somehow a reference point for assessing the substance. When I ask you, well, you don't just look at the different bracket, you've got to get to the substance, you seem to be agreeing with me, but I'm wondering whether you really are or whether what you're really saying is, no, the way it works under our case law is you do apples to apples for a disparity challenge. So if it's different guideline ranges, it's a loser. Then when we come to substantive reasonableness, we forget about the other defendant and we just look at was this defendant's a reasonable sentence. Is that your view or is it some mix of the two? And if it's a mix of the two, what is the mix? How are we supposed to do it? So, Ed, it is a mix of the two, and the reason I say that, Chief Judge Barron, is because this court has said that a claim of sentencing disparity can be one of procedural unreasonableness and or be one of substantive unreasonableness. And so when I look back to this court's case laws, it's hard to sort of say, because it's not altogether clear in all instances. Sometimes the defendant's raising both claims. And so when the apples to apples certainly would apply in the claim of procedural unreasonableness, I believe that it also applies in the context of substantive unreasonableness, but just because they're oftentimes... The Reyes case is a little bit more like that. I see the problem. Okay. Thank you. Thank you. Thank you, counsel. At this time, Attorney Brooks, please reintroduce yourself on the record to begin. You have one minute or so. Benjamin Brooks for Mr. Delacruz. Just quickly, the Concepcion case, I mean, I know everybody understands the facts are different, but in that case, he granted two storage units. He was running the operation all on his own. There was evidence that he was selling drugs from that location for more than a year in vast quantities. So there was a completely different scenario in terms of what his culpability was and sort of the level that he was involved in running his own operation. I think Roke is a marker, just like the guidelines are a marker, and you have to take all those markers into account when you're considering what is substantively reasonable, but none of them are going to be definitive in terms of deciding that. But I do think that when you look at Roke's sentencing guideline and the calculation, you see an example of how the guidelines sometimes fail to be rational because you have his... Am I out of time? You are. You have his reduction for having a mitigating role, and then that gets doubled again. So you have these tiny little differences that get amplified, just like the tiny difference between the calculated drug weight across that 32,000-kilogram threshold. So a 2% increase in the amount of drugs that he was responsible for resulted in a 27% increase under the guidelines. So I just think that's the kind of irrationality that sometimes results when you have strict guideline calculations. So thank you very much for engaging in the argument. I appreciate it. Thank you. Thank you, counsel. That concludes argument in this case.